IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>DARLA MOSS,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td>Case No.: PWG-15-2065</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>DITECH FINANCIAL, LLC, <em>et al.</em>,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td></td><td></td></tr>
</table>

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Darla Moss fell behind on the payments on her mortgage loan from Defendant Federal National Mortgage Association ("Fannie Mae"), which Defendant Ditech Financial, LLC ("Ditech"), f/k/a Green Tree Servicing, LLC serviced.  Am. Compl. ¶¶ 17–18, 34, 39, ECF No. 18. Defendants' agent BWW Law Group, LLC ("BWW") instituted a foreclosure action and informed Moss, in "a quote good through October 17, 2014" ("Reinstatement Quote"), that she could bring her loan current and avoid foreclosure by paying a "Reinstatement Amount" of $22,471.29, which would cure the default and cover attorney's fees and expenses up until October 17, 2014.  *Id.* ¶¶ 19, 34–35, 40–41.  Moss verified the amount and then paid $22,471.29 on October 10, 2014.  *Id.* ¶¶ 42–43.  Thereafter, Defendants dismissed the foreclosure action but increased her monthly payments by $290.32 to cover "corporate advance[s],"[1] such as legal fees and expenses BWW charged, all but $165.00 of which had been incurred before October 17,

_____

[1] Defendants set up "Corporate Advances" on "account[s] in an effort to split the amounts due into monthly payments to make the repayment process easier."  Apr. 3, 2015 Ltr., Am. Compl. Ex. I, ECF No. 21-8.  They represent amounts due for legal fees and costs, to be paid on a monthly basis instead of in full.  *Id.*

2014.[2]  *Id.* ¶¶ 46–48 & Ex. I, ECF No. 21-8.   Unable to afford this additional monthly expense and believing that Defendants had waived the uncharged corporate advances through the Reinstatement Quote, Moss filed suit against Defendants.   Compl., ECF No. 2.

She claims that Ditech and Fannie Mae violated various state and federal statutes, breached the agreements the parties entered into in the Deed of Trust and Reinstatement Quote, and acted negligently in representing the Reinstatement Amount to be sufficient to bring her loan current and then increasing her monthly payments to cover expenses incurred before she paid the Reinstatement Amount.   Am. Compl. ¶¶ 2–6.[3]   Defendants have moved to dismiss, and the parties fully briefed the motion.   ECF Nos. 22, 22-1, 26, 26-1, 29.   A hearing is unnecessary.   *See* Loc. R. 105.6.

Moss has not stated a claim against Fannie Mae under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* (Count II), or against either Defendant under the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* (Count I), or in negligence (Count VIII), and those claims are subject to dismissal.   Yet, Defendants have not shown that Moss failed to state a claim against Ditech under the FDCPA (Count II), or against either Defendant for breach of contract (Counts III–IV) or a declaratory judgment (Count IX).   Nor have they demonstrated that she failed to state a claim for violations of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 *et seq.*; the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. §§ 7-401 *et*

---

[2] Corporate advances of $15 and $150 were set up on October 30, 2014, representing legal costs. On October 14, 2017, after Moss verified the amount but before the October 17, 2014 date through which the Reinstatement Amount was supposed to be current, a corporate advance of $250 was set up to cover attorneys' fees.

[3] At this stage of the proceedings, I must accept the facts as alleged in Moss's Amended Complaint as true.   *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

*seq.*; or the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § § 14-201 *et seq.* (Counts V–VII). Accordingly, I will grant the motion in part and deny it in part, and dismiss Counts I and VIII in their entirety and Count II as to Fannie Mae.

### **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiff's allegations of deceptive trade practices in violation of the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. § § 7-401 *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § § 13-101 *et seq.*, are "subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)."

*Williams v. Dee Miracle Auto Grp. LLC*, No. ELH-15-2466, 2016 WL 3411640, at *4 (D. Md. June 22, 2016) (discussing MCPA) (quoting *Combs v. Bank of Am., N.A.*, No. GJH-14-3372, 2015 WL 5008754, at *6 (D. Md. Aug. 20, 2015)); *Crowley v. JPMorgan Chase Bank, Nat'l Ass'n*, No. RDB-15-00607, 2015 WL 6872896, at *10 (D. Md. Nov. 9, 2015) (discussing MMFPA).

> Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. . . ." Such allegations [of fraud] typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form.

*Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (citations omitted); *see Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549, at *9 (4th Cir. Apr. 19, 2013).

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).

**Real Estate Settlement and Procedures Act (Count I)**

Congress enacted the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, in part "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process."  12 U.S.C. § 2601(a).  To this end, a loan servicer first must acknowledge receipt of a qualified written request ("QWR") within five days of receiving it.  12 U.S.C. § 2605(e)(1).  Then, within thirty days, the servicer must *either* (A) "make appropriate corrections in the account of the borrower," and "transmit to the borrower a written notification of such correction"; *or* (B) "after conducting an investigation, provide the borrower with a written explanation or clarification that includes . . . a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer"; *or* (C) if the borrower requested information rather than a correction, investigate and provide the information or explain why it is unable to do so.  *See* 12 U.S.C. § 2605(e)(2)(A)–(C).  Significantly, the provision is disjunctive and therefore, a failure to "make appropriate corrections," as provided for in § 2605(e)(2)(A), is not necessarily a violation of § 2605(e)(2), as the servicer may have complied with subsection (B) or (C) instead.  *See id.*

Moss sent a QWR[4] by mail and by fax to Ditech on February 4, 2015.  Am. Compl. ¶ 50 & Ex. E, ECF No. 21-4.  Ditech received it by mail on February 9, 2015, acknowledged receipt three days later, on February 12, 2015, and sent a substantive response on March 3, 2015. Am. Compl. ¶ 54–55 & Exs. F–G, ECF Nos. 21-5 – 21-6.  Moss claims that Defendants violated § 2605 when "Ditech, as the agent of FNMA, failed to timely respond to [her February 4, 2015] qualified written request and failed to make appropriate corrections to the account" and "failed to

---

[4] For purposes of this section, I will assume without deciding that Plaintiff's correspondence with Defendants qualified as a QWR.

take timely action to correct errors relating to allocation of payments, final balances for purposes of reinstating and paying off the loan, or avoiding foreclosure, or other standard servicer's duties."  Am. Compl. ¶¶ 72, 74.

Defendants argue that their February 12, 2015 acknowledgment of Moss's QWR was timely, as they require QWRs to be submitted by mail, such that it was the February 9, and not the February 4, date that triggered the five-day period for acknowledging receipt. Defs.' Mem. 7–8.  They also contend that their March 3, 2015 substantive response was timely and that, although they did not correct the purported error that Moss identified, they complied with § 2605(e)(2)(B) by "providing Plaintiff with an explanation as to why [Ditech] believed the account information was correct," such that they were not required to correct the purported error. *Id.* at 9.

In Opposition, Moss does not challenge the timeliness of Defendants' responses.  *See* Pl.'s Opp'n 6.  Rather, she insists that Defendants' March 3, 2015 response "was false and materially misleading" and consequently fell "woefully short of meeting the[] requirements" of § 2605(e)(2).[5]  *Id.*  Thus, it is undisputed that Defendants sent Moss a response but did not correct her account as she requested.  *See* 2d Am. Compl. ¶ 55; Defs.' Mem. 9.  Therefore, they did not comply with § 2605(e)(2)(A).

Yet, as noted, § 2605(e)(2) provides the servicer with two alternative responses to a QWR, in lieu of making "appropriate corrections."  *See* 12 U.S.C. § 2605(e)(2)(A)–(C).  The

---

[5] According to Moss, she also alleges in her Amended Complaint that "Ditech violated RESPA by 'impos[ing] a fee or charge without a reasonable basis to do so.'"  Pl.'s Opp'n 6 n.2 (quoting Am. Compl. ¶ 73).  Notwithstanding the fact that Paragraph 73 of the Amended Complaint states that "Ditech, as the agent of FNMA, is not permitted to impose a fee or charge without a reasonable basis to do so," without actually alleging that Defendants imposed any such fee, this claim, also, alleges falsity in Defendants' response that the fees it charged were correct.

March 3, 2015 letter states: "Records indicate that additional fees and costs were assessed after the reinstatement quote was provided to you.  These are due and payable.  We have enclosed a payment history of the account for your review."   Am. Compl. Ex. G. Thus, it shows that Defendants reviewed their records, and the letter provides "a written explanation or clarification that includes . . . a statement of the reasons for which the servicer believes the account of the borrower is correct."  *See* 12 U.S.C. § 2605(e)(2)(B).   On the face of the letter, Defendants complied with § 2605(e)(2)(B).   Insofar as Moss challenges the veracity of their response, RESPA is not the proper vehicle for recovering from damages from false or misleading statements.  *See Yacoubou v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 623, 630 (D. Md. 2012) ("Unlike the defamation tort, which depends in part on the truth or falsity of communications, RESPA governs the *timing* of communications." (emphasis added)), *aff'd sub nom. Adam v. Wells Fargo Bank*, 521 F. App'x 177 (4th Cir. 2013).  Consequently, Moss fails to state a claim for a violation of RESPA.

### Fair Debt Collection Practices Act (Count II)

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, "'protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage.'"  *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996) (quotation omitted)).  To state a claim for relief under the FDCPA, Plaintiff must allege that "(1) [she] has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [ ] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."  *Id.* at 759–60 (citation omitted); *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 524 (D. Md. 2013) (citing 15

U.S.C. § 1692).  Moss claims that Defendants violated the FDCPA by "engaging in . . . conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt," in violation of 15 U.S.C. §1692(d), "using false, deceptive, or misleading representations or means in connection with the collection of a debt," in violation of 15 U.S.C. §1692(e), and "using unfair or unconscionable means to collect or attempt a debt," in violation of 15 U.S.C. §1692(f)."  Am. Compl. ¶¶ 79–81.

Defendants contend that Moss cannot state an FDCPA claim against them because neither is a debt collector for purposes of the FDCPA.  Defs.' Mem. 10.  It is undisputed that Ditech is a mortgage loan servicer and Fannie Mae is a creditor. *See* Am. Compl. ¶ 28; Defs.' Mem. 10.  Defendants argue that servicers and creditors do not qualify as "debt collectors" unless the loan was in default when Ditech began servicing it and when Fannie Mae acquired the Note.  *Id.*  Moss counters that "*Ditech* became the servicer of Ms. Moss's loan when she was already in default," such that "*Ditech* constitutes a debt collect[or] under the FDCPA."  Pl.'s Opp'n 8–9 (emphasis added).

Notably, in her Opposition, Moss does not assert that *Fannie Mae* qualifies as a debt collector.  Indeed, in *Henson v. Santander Consumer USA, Inc.*, the Fourth Circuit recently concluded that "the default status of a debt has no bearing on whether a person qualifies as a debt collector" or a creditor.  817 F.3d 131, 135 (4th Cir. 2016).  Observing that 15 U.S.C. § 1692a "excludes from the definition of creditor 'any person to the extent that he receives an assignment or transfer of a *debt in default* solely for the purposes of facilitating collection of such debt *for another*,'" the Fourth Circuit further concluded that the exclusion does not apply when a person acquires debt "for its own account," instead of "on behalf of others." *Id.*  Thus, it is immaterial whether the debt was in default when Fannie Mae acquired it, as Fannie Mae acquired it "for its

own account," as a creditor. *See id.* Therefore, Moss cannot state an FDCPA claim against Fannie Mae, and this claim is subject to dismissal with regard to Fannie Mae. *See id.*

With regard to Ditech, as a loan servicer, the company indeed would qualify as a debt collector if the loan were in default when Ditech began servicing it. *See id.*; 15 U.S.C. § 1692a. Moss does not allege explicitly that Ditech is a debt collector or that the loan was in default when Ditech began servicing it. But she does allege that (1) Ditech began servicing the loan on September 1, 2013; (2) her monthly payment was $787.94 (which is equivalent to $9,455.28 per year); (3) she was sent a Notice of Intent to Foreclose on October 28, 2013; and (4) as of October 17, 2014, the amount to cure her default, including attorney's fees and expenses, was $22,471.29 (which is more than twice what Moss's monthly payments would have totaled for the period that Ditech serviced her loan). Am. Compl. ¶¶ 31–34, 39–41. Additionally, the April 3, 2015 response to Moss's second QWR (dated March 17, 2015) lists "corporate advances," that is, amounts due for legal fees and costs, as far back as August 21, 2013. Am. Compl. Ex. I, ECF No. 21-8. Thus, while inartfully pleaded, it is clear that, drawing all reasonable inferences in Moss's favor, as I must, she was in default when Ditech began servicing her loan on September 1, 2013, and her FDCPA claim against Ditech is not subject to dismissal on this ground. *See Henson*, 817 F.3d at 135; 15 U.S.C. § 1692a; *Stewart*, 859 F. Supp. 2d at 759–60.

### Maryland Mortgage Fraud Protection Act (Count V) and Maryland Consumer Protection Act (Count VII)

The Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 *et seq.*, provides that "'a person may not engage in any unfair or deceptive trade practice,'" such as a "false or misleading statement[ ]," in relation to "'[t]he extension of consumer credit' or the 'collection of consumer debts.'" *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-

3758, 2013 WL 247549, at *10 (D. Md. Jan. 22, 2013) (quoting Com. Law § 13-303). To state a claim for a violation of the MCPA through "false or misleading statements," Moss must allege that Defendants "made a false or misleading statement and that "the statement caused [Plaintiff] an actual loss or injury." *Id.* Similarly, to state a claim under the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. §§ 7-401 *et seq.*, which provides that "[a] person may not commit mortgage fraud," Real Prop. § 7-402, Moss must allege that "the defendant knowingly or recklessly made a false representation to the plaintiff with the intent to defraud the plaintiff, and that the plaintiff's reasonable reliance upon that misrepresentation caused her compensable injury." *Bell v. Clarke*, No. TDC-15-1621, 2016 WL 1045959, at *4 (D. Md. Mar. 16, 2016) (quoting *Ademiluyi*, 929 F. Supp. 2d at 530).

Moss claims that Defendants violated the MMFPA because the Reinstatement Amount that she was offered to bring her loan current "was a deliberate misstatement or misrepresentation" that "omitted the 'corporate advances' allegedly still owed" when Defendants' agent BWW[6] "knew of the 'corporate advances'" she still would have to pay. Am. Compl. ¶¶ 34, 106–07. Similarly, she alleges that Defendants violated the MCPA's prohibition on deceptive trade practices by "refus[ing] to honor the Reinstatement Amount, by demanding that Ms. Moss pay $290.32 extra per month for 'corporate advances.'" *Id.* ¶ 124.

---

[6] Defendants "challenge Plaintiff's ability to assert claims against them based on a representation made by a third-party." Defs.' Mem. 12 n.5. Defendants are wrong. It is well established that "trustees who [like BWW] are plaintiffs in a foreclosure action represent the interests of the mortgagee, and thus the two are 'effectively one and the same.'" *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 463 (D. Md. 2013) (quoting *Cohn v. Charles*, 857 F. Supp. 2d 544, 549 (D. Md. 2012)); *see Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 644 (4th Cir. 2011) (finding that, in the context of claim preclusion, "privity exist[ed] between BHL and the two additional parties involved [in the federal court proceedings], HSBC and [mortgage servicer] Wells Fargo" because [substitute trustee] BHL prosecuted the state court foreclosure action on behalf of Wells Fargo, which in turn serviced the underlying mortgage on behalf of HSBC").

Defendants argue that Moss fails to allege any misrepresentation or deceptive statement, as is necessary to state a claim under either act, because "Plaintiff was specifically told that the quoted amount represented an '*estimated sum*' that was subject to '*final verification* by' Ditech." Defs.' Mem. 12 (emphasis added). Certainly, Moss acknowledges that she was told:

> Based on the figures provided by the Servicer, the *estimated sum* required to cure the default under the Deed of Trust as of October 17, 2014 is $22,471.29. This Reinstatement Amount includes attorney's fees and expenses that are expected to be incurred on or before October 17, 2014 but does not include amounts that may be incurred after that date. Interest, fees, and costs may continue to accrue in accordance with the terms of the Deed of Trust….

Am. Compl. ¶ 41 (quoting Reinstatement Quote 1, Am. Compl. Ex. B, ECF No. 21-1) (emphasis added).   The Reinstatement Quote, which Moss attached to her Complaint, also stated: "To verify the correct reinstatement amount due at the time you are ready to pay, please contact our office at 301-961-6555[,]" and it cautioned that "[a]ny quoted reinstatement amount is subject to final verification by the Servicer."  Reinstatement Quote 1, 2.

But, Moss also alleges that she "called BWW and verified the Reinstatement Amount prior to making payment."  Am. Compl. ¶ 42.  Further, she alleges that "[o]n October 10, 2014, acting in reasonable reliance of the reinstatement correspondence," she "used a substantial amount of her savings and financial resources" to pay BWW $22,471.29, and thereafter, BWW dismissed the foreclosure action but imposed charges for legal fees and expenses incurred prior to when the Reinstatement Amount was verified.   *Id.* ¶¶ 41–46.   Also, she attaches correspondence from BWW showing that, after BWW verified the Reinstatement Amount, BWW informed her that "[t]he reinstatement amount did not include the whole bulk amount of the advances due on the account."  Apr. 3, 2015 Ltr. 1.  Thus, she has alleged a misrepresentation, as she was told that the Reinstatement Amount was verified as the total amount she owed but then, after she relied on the amount to submit payment, BWW acknowledged that it had not been

the complete amount she owed.  *See* Am. Compl. ¶¶ 41–43.  Moreover, the inferences that

reasonably flow from Moss's pleadings show that Ditech clearly verified the amount, because

the loan was reinstated and no additional amount was charged to reinstate it, and therefore the

fact that the Reinstatement Amount was "subject to final verification" does not eliminate the

misrepresentation. Moss's MMFPA and MCPA claims are not subject to dismissal on this basis

because Defendants have failed to meet their burden of "'prov[ing] that no legally cognizable

claim for relief exists.'"  *Doe v. Salisbury Univ.*, 123 F. Supp. 748, 762 (D. Md. 2015) (quoting

5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1357 (3d ed. 2004)).

Defendants also argue that there was no injury because "Defendants reinstated Plaintiff's

mortgage loan upon payment of the 'estimated sum' and dismissed the foreclosure action."

Defs.' Mem. 12–13.   To the contrary, Plaintiff claims that she relied on "Defendants'

representations and agreement that a Reinstatement Amount of over $22,000.00 dollars would

bring her current and up-to-date on her mortgage loan such that she could make regular

payments going forward with her limited disability income"; "used a substantial amount of her

savings   and   financial   resources"   to   pay   $22,471.29   in   reliance   on   Defendants'

misrepresentations; and "has experienced severe anxiety, depression, headaches, and loss of

appetite as a result of the default of her mortgage and the reinstatement situation with

Defendants"; and also has incurred "additional interest, late fees, and penalties resulting from the

misapplication of payments and costs." Am. Compl. ¶¶ 5, 43, 67, 76.  These allegations of injury

are more than sufficient to state a claim under the MMFPA and MCPA.  *See Marchese v.*

*JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 468–69 (D. Md. 2013) (allegations of

"emotional and physical distress, including severe anxiety, depression, insomnia, and stomach

pains, in addition to bogus late fees, attorney fees, and damages to his credit" sufficiently alleged

injury under heightened pleading standard for MCPA claim, and "because the Court previously determined that Mr. Marchese sufficiently pled actual loss or injury under the MCPA, Mr. Marchese also sufficiently pled a claim under the MMFPA"); *Butler v. Wells Fargo Bank, N.A.*, No. MJG-12-2705, 2013 WL 3816973, at *3 (D. Md. July 22, 2013) ("[A] complaint will adequately plead damages under the MCPA when it contains plausible allegations that the plaintiff relied upon the defendant's false or misleading statements and suffered actual loss or injury *as a result* of that reliance."); *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) (denying motion to dismiss after concluding that "the plaintiffs . . . stated sufficiently an actual injury or loss as a result of a prohibited practice under the MCPA" by "alleg[ing] that CitiMortgage's misleading letters led to the following damages: damage to Mrs. Allen's credit score, emotional damages, and forgone alternative legal remedies to save their home").  Therefore, Defendants' motion will be denied as to Moss's MCPA and MMFPA claims.

### Maryland Consumer Debt Collection Act (Count VI) and Breach of Contract (Counts III and IV)

The Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 *et seq.*, "'prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt.'"  *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *9 (D. Md. Jan. 22, 2013) (quoting *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731-32 (D. Md. 2011) (citing Md. Code Ann., Com. Law § 14–202)).  It specifically provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist."  Com. Law § 14-202(8).

Moss alleges that Defendants violated the MCDCA when they "claimed, attempted, or threatened to enforce a right to improper fees and 'corporate advances' with knowledge or with reckless disregard as to the falsity of the existence [of that] right . . . ." Am. Compl. ¶ 115.  She is claiming, not that Defendants never had the right to collect corporate advances, but rather that, after representing the Reinstatement Amount as the entire payment necessary to bring the account (including attorneys' fees and expenses) current *through* October 17, 2014, Defendants could not seek payment on fees incurred *prior* to October 17, 2014.  *See id.*; Pl.'s Opp'n 13 & n.8.  This is the same claim she advances in Counts III and IV for breach of contract[7]:  Moss claims in Count III that the Reinstatement Quote was an agreement between the parties "to reinstate her loan including all attorney's fees and expenses, in exchange for the payment of $22,471.29," and that Defendants breached that agreement "by charging Ms. Moss improper attorney's fees and expenses after Ms. Moss paid $22,471.29 to reinstate the loan."  Am. Compl. ¶¶ 85–86.  She claims in Count IV that the same act "breached the terms of the Deed of Trust," which "states that [Moss] has the right to reinstate the loan after a default and acceleration," when they "fail[ed] to properly reinstate Ms. Moss's loan and instead impos[ed] additional charges after the alleged reinstatement."  *Id.* ¶¶ 94–99.

Defendants argue that the MCDCA claim must fail because they "are lawfully entitled to collect the corporate advances pursuant to the Deed of Trust, irrespective of when those amounts

---

[7] A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ."  *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)).  A contract exists where there is "'mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Spaulding v. Wells Fargo Bank, N.A.*, No. 12-1973, 2013 WL 1694549, at *9 (4th Cir. Apr. 19, 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)). Defendants do not challenge the existence of either contract; they disagree as to the terms of the contracts.  *See* Defs.'s Mem. 16–17.

are applied against Plaintiff's account." Defs.' Mem. 15.  Likewise, they insist that Moss fails to

allege a breach of either contract because she alleges that "she paid the reinstatement amount,

was given a receipt for 'Reinstatement,' and that, as a result, her loan was reinstated and the

foreclosure action was dismissed." Defs.' Mem. 16.  Defendants note that the Reinstatement

Amount was "'subject to final verification by' Ditech." *Id.*

It is true that the Deed of Trust provides that Fannie Mae could "charge [Moss] fees for

services performed in connection with [Moss's] default, for the purpose of protecting [Fannie

Mae's] interest in the Property and rights under this [Deed of Trust], including, but not limited

to, attorneys' fees, property inspection and valuation fees."  Deed of Trust ¶ 14, Compl. Ex. A,

ECF No. 2-1. Additionally, it stated that "[a]ny forbearance by [Fannie Mae] in exercising any

right or remedy including, without limitation, [Fannie Mae's] acceptance of payments . . . in

amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any

right or remedy."  *Id.* ¶ 12.  But, it also stated that Moss would "have the right to have

enforcement of this [Deed of Trust] discontinued" if she

> (a) pays [Fannie Mae] all sums which then would be due under this [Deed of
> Trust] and the Note as if no acceleration had occurred; (b) cures any default of
> any other covenants or agreements; (c) pays all expenses incurred in enforcing
> this [Deed of Trust], including, but not limited to, reasonable attorneys' fees,
> property inspection and valuation fees, and other fees incurred for the purpose of
> protecting [Fannie Mae's] interest in the Property and rights under this [Deed of
> Trust]; and (d) takes such action as [Fannie Mae] may reasonably require to
> assure that [Fannie Mae's] interest in the Property and rights under this [Deed of
> Trust], and [Moss's] obligation to pay the sums secured by this [Deed of Trust],
> shall continue unchanged.

*Id.* ¶ 19.

At this stage, Moss sufficiently has alleged that the September 23, 2014 Reinstatement

Quote is an agreement by Defendants to waive the legal fees and costs already incurred but not

included in the quote once verified. If this is the case, then Defendants no longer have the right to

collect, or attempt to collect, those fees and costs, and Moss has stated claims under the MCDCA and for breach of contract.  Defendants have not shown that they were entitled to the previously-incurred fees and costs after Moss paid the Reinstatement Amount, and consequently they have not "'prov[en] that no legally cognizable claim for relief exists.'"  *See Doe*, 123 F. Supp. at 762 (quoting Wright & Miller, *Fed. Prac. & Proc.* § 1357).  Whether the Reinstatement Amount actually was verified and whether it waived fees and costs that were not included is an issue to be addressed at summary judgment or at trial.

### Negligence (Count VIII)

To state a claim for negligence, Plaintiff must allege "(a) a duty owed by the defendant[s] to the plaintiff, (b) a breach of that duty, and (c) injury proximately resulting from that breach." *Barclay v. Briscoe*, 47 A.3d 560, 574 (Md. 2012).   She claims that, "[u]nder the circumstances alleged, in which Defendants and its agents [sic] engaged in significant communications and activities with Ms. Moss and the loan, Defendants owed a duty to Ms. Moss to provide her with accurate information about the mortgage loan and reinstatement figures and [Defendants'] obligations and rights thereunder."  Am. Compl. ¶ 127. According to Moss,

> Defendants breached that duty by instructing Ms. Moss to make the Reinstatement Amount in the verified amount stated by Defendants' agent BWW, advising Ms. Moss that her mortgage loan would be completely paid and up-to-date, and then instead subsequently charging unlawful attorney's fees and expenses to Ms. Moss's account unilaterally without her knowledge or consent, and ultimately placing Mr. Moss right back into default status.

*Id.* ¶ 128.  She alleges that the breach caused her damage "in the amount of the Reinstatement Amount, any and all accrued arrears stemming from the default, and emotional non-economic damages."  *Id.* ¶ 129.

The fault in Moss's argument is that there is no universal duty to exercise reasonable care.  *See Premium of Am., LLC v. Sanchez*, 73 A.3d 343, 354 (Md. Ct. Spec. App. 2013).  Rather, tort liability exists only where "'the law will give recognition and effect'" to "'an obligation . . . to conform to a particular standard of conduct toward another.'"  *Id.* (quoting *Gourdine v. Crews*, 955 A.2d 769 (Md. 2008) (citation omitted)).  Significantly, "'absent that duty, there can be no negligence.'"  *Id.* (quoting *Barclay v. Briscoe*, 47 A.3d 560, 574 (Md. 2012) (citation omitted)).  Therefore, "'when analyzing a negligence action it is customary to begin with whether a legally cognizable duty exists.'"  *Id.* (quoting *Pendleton v. State*, 921 A.2d 196, 204 (Md. 2007)).

Moss's negligence claim against Fannie Mae cannot survive Defendants' motion because she does not allege any "legally cognizable duty" that Fannie Mae owed.  *See Pendleton*, 921 A.2d at 204; *Barclay*, 47 A.3d at 574.  As for Ditech, Plaintiff's pleadings describe Ditech as "a licensed real estate professional" that owed Ms. Moss "a duty of care due to the 'intimate nexus' which exists between . . . Ms. Moss and Ditech" and specifically "a duty under the Maryland Consumer Protection Act and Maryland common law to make a 'reasonable investigation' of the true facts in the real estate transaction on which the borrower (and other parties) would rely in order to complete the transaction*." See* Am. Compl. ¶¶ 25, 27 (quoting *Hoffman v. Stamper*, 867 A.2d 276 (Md. 2005)).  According to Moss, Ditech, "[a]s a licensed Maryland mortgage lender," has

> a "duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan" and to "promptly" provide borrowers with an accounting of their loan when requested and to have "trained" employees on staff to "promptly answer and respond to borrower inquiries."

*Id.* ¶ 26 (quoting Md. Code Regs. 09.03.06.20).

Although "tort liability may be imposed upon contractual privity or its equivalent, . . . there must have been a breach of the duty owed under the terms of the contract." *Yousef v. Trustbank Sav. F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990).  Here, although Moss has alleged the Deed of Trust and Reinstatement Quote as loan agreements, *see* Am. Compl. ¶¶ 85–86, 94–99, she has not alleged that either agreement imposed upon Dietch a duty to exercise reasonable care.  Therefore, it cannot be the basis for Ditech's breach.

Thus, this claim must be based on an alleged breach of a fiduciary duty. *See* Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* 522–27 (5th ed. 2013) (noting that, while no independent cause of action exists for breach of fiduciary duty, breach of fiduciary duty can be alleged as an element of another cause of action, such as negligence).  For a fiduciary duty to be breached, Ditech must be in a fiduciary relationship with Moss. *See id.* at 525–26 (stating that elements of claim for negligence based on breach of a fiduciary duty are (1) *a fiduciary relationship existed*, (2) the fiduciary breached the duty it owed to the beneficiary, and (3) the breach caused harm to the beneficiary); *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 685 n.46 (Md. Ct. Spec. App. 2012) (stating elements).

"'A fiduciary relationship . . . involves a duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters within the scope of the relation.'" *Lasater v. Guttman*, 5 A.3d 79, 93 (Md. Ct. Spec. App. 2010) (quoting *Buxton v. Buxton*, 770 A.2d 152, 164 (Md. 2001) (citation and quotation marks omitted)).  It is more than a "'confidential relationship,'" which only requires that one party "'has gained the confidence of the other and purports to act or advise with the other's interest in mind.'" *Id.* (quoting *Buxton*, 770 A.2d at 164 (citation and quotation marks omitted)).  Examples of fiduciary relationships include "'trustee and beneficiary, guardian and ward, agent and principal, attorney and client, partners in a

partnership, corporate directors and their corporation.'" *Id.* (citation and quotation marks omitted).

Here, Ditech is "a licensed real estate professional," "a licensed Maryland mortgage lender," and the "mortgage servicer" on the mortgage loan for which Plaintiff is the borrower. Am. Compl. ¶¶ 17, 25–28.  In contrast with the fiduciary relationships described above, "banks and mortgage servicers do not owe customers a fiduciary duty."  *Ayres v. Ocwen Loan Servicing, LLC*, No. WDQ-13-1597, 2014 WL 4269051, at *4 (D. Md. Aug. 27, 2014).  Four "'special circumstances'" exist that are an exception to this rule,

> under which a fiduciary relationship can exist between a lender and a borrower: the lender: "(1) took on any extra services on behalf of [the borrowers] other than furnishing ... money ...; (2) received a greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control ...; or (4) was asked by [the borrowers] if there were any lien actions pending."

*Windesheim v. Larocca*, 116 A.3d 954, 969 (Md. 2015) (quoting *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 418 (Md. 2012)).  Moss has not alleged any of these "special circumstances" giving rise to a fiduciary relationship under which to impose a fiduciary duty on Ditech as lending institutions.  *See id.*  Therefore, she has failed to establish the duty element of their claim for negligence.  *Dynacorp Ltd.*, 56 A.3d at 685 n.46.  Defendants' Motion to Dismiss is granted with regard to this claim.

### Declaratory Judgment and Injunctive Relief (Count IX)

Pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 3-401 – 3-415 and 28 U.S.C. §§ 2201–2202, Plaintiff seeks "a declaration that the Defendants' charges of attorney's fees, costs, and expenses through the corporate advances and escrow charges were a breach of their contract with Plaintiff and a fraudulent misrepresentation," and "an injunction preventing the Defendants from imposing or attempting to collect any further corporate advances." Am. Compl. ¶¶ 131–33.  She

also seeks an order "that Defendants must credit Ms. Moss for any and all payments made on her [account], including payments being held in suspense accounts." *Id.* ¶ 133.

Defendants argue that Moss's claim for declaratory judgment and injunctive relief is subject to dismissal because "it is entirely derivative of Counts I through VIII, which are subject to dismissal." Defs.' Mem. 19. Because, as discussed above, Counts II through VII are not subject to dismissal, I will not dismiss Moss's claim for declaratory and injunctive relief on this basis.

## Conclusion

In sum, Moss's claims against Defendants for breach of contract and violations of the MMFPA, MCDCA, and MCPA, as well as Moss's FDCPA claim against Ditech and her claim for declaratory judgment and injunctive relief will proceed. Defendants must answer the Amended Complaint, and I will schedule a Rule 16 scheduling conference to discuss discovery and related matters. But, because Moss has failed to state a claim against Fannie Mae under the FDCPA or against either Defendant in negligence or under RESPA, those claims will be dismissed. Moss's FDCPA claim against Fannie Mae and negligence claim did not appear in her original pleading. *See* Compl. Dismissal of the negligence claim will be without prejudice as she has not had the opportunity to amend it. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) ("When a plaintiff fails to state a claim, he 'should generally be given a chance to amend the complaint . . . before the action is dismissed with prejudice.'" (citation omitted)). Even though she also has not had the opportunity to amend her FDCPA claim against Fannie Mae, given that "there is no set of facts the plaintiff could present to support [her] claim," that claim will be dismissed with prejudice. *See id.* (citing *Cozzarelli v. Inspire Pharm., Inc.,* 549 F.3d 618, 630 (4th Cir. 2008)).

Her RESPA claim appeared in her original complaint, and Defendants filed a letter request to file a motion to dismiss, identifying the deficiencies they perceived in her pleading. ECF No. 15.  I denied their request and afforded Moss the opportunity to amend to address the deficiencies that Defendants identified, and I cautioned that any subsequent dismissal of her original claims would be with prejudice.  ECF No. 17.  Her failure to correct the deficiencies in her RESPA claim suggests that further amendment would be futile.  Therefore, this claim will be dismissed with prejudice. *See id.*; *McLean v. United States*, 566 F.3d 391, 400–01 (4th Cir. 2009) ("Once a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as the claim cannot be made viable through reformulation." (internal citation omitted)).

## ORDER

Accordingly, for the reasons stated in this Memorandum Opinion and Order, it is, this  1st  day of   August  , 2016, hereby ORDERED that

1. Defendants' Motion to Dismiss, ECF No. 22, IS GRANTED IN PART AND DENIED IN PART as follows:

    a. Defendants' Motion IS GRANTED as to Counts I and VIII, and as to the claim against Fannie Mae in Count II;

    b. Defendants' Motion IS DENIED as to Counts III–VII and IX, and as to the claim against Ditech in Count II;

    c. The RESPA claim against both Defendants in Count I and the FDCPA claim against Fannie Mae in Count II ARE DISMISSED WITH PREJUDICE; and

    d. The negligence claim against both Defendants in Count VIII IS DISMISSED WITHOUT PREJUDICE;

2.   Defendants' Answers ARE DUE on or before August 22, 2016; and

3.   A Rule 16 scheduling conference will be scheduled promptly.

                                           /S/
                                   Paul W. Grimm
                                   United States District Judge

lyb